IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:14-cv-79 (WOB-CJS)

LAUREN HENDRIX                                                                              PLAINTIFF

VS.                            MEMORANDUM OPINION AND ORDER

NORTHERN KENTUCKY UNIVERSITY, ET AL                          DEFENDANTS

This matter comes before the Court on the defendants' motion for summary judgment (Doc. 46).

Having previously taken this matter under submission (Doc. 51), the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

In spring 2010, Plaintiff Lauren Hendrix began full-time study at Northern Kentucky University (NKU), pursuing her Bachelor of Science degree in nursing (BSN). It is undisputed that the requirements for Hendrix to earn this degree were governed by the 2009–2010 course catalog published by NKU. Among other provisions, the catalog listed each course a nursing student was required to pass in order to earn a BSN, including the final-semester course at issue in this case, NRS 398. However, both parties acknowledge that the catalog did not list the specific requirements to pass any individual course.

It is undisputed that a Kentucky nursing program may maintain approval by the Kentucky Board of Nursing only if eighty-five percent of its graduating students sitting for the National Council Licensure Examination each year pass that exam on the first attempt. 201 Ky. Admin.

Regs. 20:360. Having failed to meet this requirement for several consecutive years, NKU's nursing program was placed on "conditional status" in 2008 and was facing "probational status" in 2011 if it did not raise the pass rate to the minimum threshold.

To prevent being placed on probational status in spring 2011, NKU reorganized the way it used a commercially produced exam-preparation program that had been part of its curriculum in various ways for several years. Beginning that semester, as part of their coursework for NRS 398, students were required to attain a score of 900 on a practice licensing exam produced by Health Education Services, Inc. (HESI). All BSN students were notified by email of the change to the requirements of NRS 398.

The HESI practice exam remained part of NRS 398 two years later when Hendrix took the course in spring 2013. She was allowed four attempts to pass the exam, receiving accommodations each time due to her registration with the University's disability support services. Unfortunately, Hendrix was not able to achieve the minimum required score and, therefore, did not pass NRS 398. She was informed that she would have to retake her final-semester courses the next semester in order to graduate. She declined to do so, instead deciding to appeal through the University's system.

Through much written correspondence, Hendrix argued to NKU administrators that the HESI requirement should not have applied to her because she read certain provisions of the catalog to allow her to proceed under former requirements when new requirements were added after she had enrolled in the BSN program.

Hendrix was allowed to advance through the University's entire appeal process, which included consideration of her arguments by defendants Denise Robinson and Carrie McCoy, respectively dean of the College of Health Professions and chair of the Department of Nursing.

2

The administrators ultimately denied her appeal, reasoning that passing NRS 398 was listed in the catalog as a requirement for graduation when Hendrix entered the program, and that requirement remained in identical form throughout Hendrix's tenure at NKU. They found the addition of the HESI practice exam to be simply a change to the requirements to pass NRS 398.

Arguing that she was denied due process, Hendrix now asks this Court to order NKU administrators to grant her university appeal and award her a degree.

*Analysis*

**1.    Hendrix's Contractual Arguments**

The Court will assume that Hendrix has a property right embodied by the course catalog mentioned above. However, it is clear that she received ample procedural due process in her dispute with the University. *Cf. Bell v. Ohio State Univ.*, 351 F.3d 240, 249 (6th Cir. 2003).

Considering the catalog as a contract, the Court holds that its provisions validly empowered NKU to require Hendrix to successfully pass the HESI with a 900 score. Three provisions of the catalog are pertinent to this analysis. The one primarily relied on by Hendrix states:

> If you are pursuing a degree, you are required to fulfill the requirements as they are listed in the catalog for the semester in which you enroll in that program.
> If the requirements change after you have enrolled in the program, you have the option of fulfilling either the old or new requirements.[1]

However, the catalog also provides: "The University reserves the right to change the requirements published in this catalog at any time." Hendrix argues that this is offset by another provision: "The colleges of the university reserve the right to change requirements. Program changes will become effective at the beginning of the fall semester and are applicable only to new students."

---

[1] This provision has been referred to in the briefs and argument as the "grandfather clause."

As the Court interprets the catalog, the "requirements" referred to mean the *courses* a student is required to take. The courses Hendrix had to take were the same as those listed in the catalog at the time she enrolled. Adding the HESI exam was simply a change to the content of the NRS 398 course. Therefore, the *requirements*, as that term is used in these provisions, did not change between the time of Hendrix's enrollment and the semester in which she was scheduled to graduate. The fact that Hendrix had problems with this kind of exam might require accommodation under the Americans with Disabilities Act, but several such accommodations were made to assist her, and Hendrix makes no claim under this Act.

A separate and equally sufficient ground for the University's position is the fact that the catalog also provided:

> The school [of nursing] reserves the right to change the program of study as needed to fulfill state approval and national certification. These include . . . [the] Kentucky Board of Nursing . . . and/or University requirements.[2]

It is not disputed that the addition of the practice examination to NRS 398 was needed, in the judgment of the University, to improve its graduates' ability to pass the licensing exam administered after graduation pursuant to Kentucky state regulations. If the passing rate was not improved, the University nursing program stood to lose its accreditation. Therefore, the addition of the HESI exam to the course (which made it something like a bar review course) was a change to "the program of study as needed to fulfill state approval and national certification."

Such a change, as pointed out above, was expressly authorized by the catalog. Therefore, even if the catalog was contractual, the "contract" contained exceptions applicable to Hendrix's situation.

---

[2] In the view of the Court, this clause gives the University the right to refuse to apply the grandfather clause, even if it were applicable to Hendrix's situation.

## 2.    Substantive Due Process[3]

It is doubtful that Hendrix can claim a substantive due process right here in light of Sixth Circuit precedents:

> Where, as we explain below, there is no equal protection violation, we can see no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process. *Cf. Gutzwiller v. Fenik*, 860 F.2d 1317, 1328–29 (6th Cir.1988) (stressing, in the public university context, the similarity of equal protection and substantive due process). Certainly the contention that the medical college's actions were arbitrary or capricious cannot be sufficient; otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act. *See, e.g.*, 5 U.S.C. § 706(2)(A) (review of agency action under arbitrary or capricious standard).

*Bell*, 351 F.3d at 251 (footnote omitted). Even assuming that she did have a substantive due process right, it was not violated by the defendants.

"[S]ubstantive due process 'protects individual liberty against certain government actions regardless of the procedures used to implement them.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) and *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)).

In some substantive due process cases, the issue is whether government action "shocks the conscience." Although this standard can be used in cases such as the case at bar involving administrative issues, its use is almost always confined to excessive force or brutal treatment cases. *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760, 774–75 (2003); *Range v. Douglas*, 763 F.3d 573, 589–90 (6th Cir. 2014).[4]

The appropriate substantive due process standard to be applied in federal court review of

---

[3] Plaintiff's Memorandum in Opposition to Summary Judgment makes no state law claims. Under Kentucky law, the courts will not declare an administrative decision arbitrary and capricious if it is supported by "substantial evidence." *Studor, Inc. v. Commonwealth Office of Hous., Bldgs & Constr.*, 390 S.W.3d 145, 148 (Ky. Ct. App. 2012). These decisions are so supported.

[4] When used in administrative cases, only actions of "extreme irrationality" meet the "shocks the conscience" criteria. *Pearson*, 961 F.2d at 1222; *see Range*, 763 F.3d at 590.

state administrative actions is whether such actions are "arbitrary and capricious." *EJS Props.*, 698 F.3d at 855. "Fourteenth Amendment substantive due process requires that both state legislative and administrative actions that deprive the citizen of 'life, liberty or property' must have some rational basis. . . . [I]n reviewing administrative action the federal court must make an extremely limited review of the evidence. . . ." *Pearson*, 961 F.2d at 1223 (footnote omitted). "This review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it. The state decision may not be set aside as arbitrary and capricious if there is 'some factual basis' for the administrative action." *Id.* at 1222 (footnote omitted).

"[T]he federal courts should 'show great respect' for the local authority's 'professional judgment. Plainly they may not override it unless it is such a substantial departure from accepted . . . norms as to demonstrate that the [decisionmaker] . . . did not actually exercise professional judgment.'" *Id.* (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)) (alterations in original).

The Court holds that the defendants' administrative decisions concerning Hendrix's situation fall far short of these standards for finding a violation of substantive due process. The administrators' interpretation of the catalog as permitting adding the exam requirement to the course had at least "some factual basis." So did their decision that this change did not trigger the grandfather clause. Nor do the facts indicate "such a substantial departure from accepted . . . norms as to demonstrate [they] did not actually exercise professional judgment." *Id.*

Therefore, **IT IS ORDERED** that the defendants' motion for summary judgment (Doc. 46) must be, and is hereby, **GRANTED**. A separate judgment will enter accordingly.

This 20th day of November, 2015.



Signed By:
**_William O. Bertelsman_** WOB
United States District Judge